UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLENE BRIGGS, ET AL | CIVIL ACTION |
| | NO: 12-2145 c/w 13-5335 and 13-5342 |
| VERSUS | **APPLIES TO 13-5335 AND 13-5342** |
| TANGIPAHOA PARISH SHERIFF DANIEL EDWARDS, ET AL | SECTION: "J" (4) |

## ORDER

Before the Court are Defendants' **Motions to Dismiss (Rec. Docs. 122, 124)** and Plaintiffs' oppositions thereto (Rec. Docs. 125, 127). Defendants' motions were set for hearing on October 23, 2013, on the briefs. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Defendants' motions should be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This matter arises from wrongful death claims under 42 U.S.C. § 1983 and Louisiana state law tort claims filed on behalf

1

of Cjavar "Dee Jay" Galmon ("Dee Jay") and on behalf of Plaintiffs individually. It is undisputed that, in the midst of a scuffle outside of a nightclub in Tangipahoa Parish, a bullet from Deputy William Phebus ("Deputy Phebus")'s weapon mortally wounded Dee Jay. The theories regarding the cause of this incident are that Deputy Phebus either fired the gun intentionally or that a twitch in Deputy Phebus' finger caused the weapon to accidentally discharge. In support of the latter theory, it is alleged that, at the request of Deputy Phebus, Lieutenant Steven Redmond ("Lt. Redmond") had previously installed an aftermarket trigger in Deputy Phebus's service weapon which made it fire more easily; and, as a result, any twitch in Deputy Phebus's finger would have caused the gun to fire.

Several lawsuits have arisen from this incident. Willene Briggs and Kim Brumfield, Dee Jay's mother and sister, initially filed a complaint ("the Original Complaint") against Deputy Phebus and Sheriff Daniel Edwards ("Sheriff Edwards") on August 21, 2012.[1] On April 19, 2013, the parties deposed Deputy Phebus, at which time he indicated that Lt. Redmond had previously

---

[1] Briggs and Brumfield later amended their complaint to add Kendra Pendleton and Allen Briggs, Jr., Dee Jay's siblings, as plaintiffs and Columbia Casualty Company as a defendant.

installed an aftermarket trigger on his weapon, and it was this trigger that caused him to accidentally shoot Dee Jay. (Depo. of Deputy Phebus, p. 70-71, Rec. Doc. 127-3) On April 30, 2013, Carl Galmon, Sr. ("Mr. Galmon"), Dee Jay's father, intervened in the original suit. (Exh. B to Def.'s Mot. to Dismiss, Rec. Doc. 122-3) On August 7, 2013, the parties deposed Lt. Redmond who admitted that he installed the aftermarket trigger. (Exh. to Def.'s Opp., Rec. Doc. 127-1, p. 3) On August 9, 2013, Willene and Allen Briggs, Brumfield, and Pendleton (collectively, "Briggs") filed suit against Lt. Redmond and Sheriff Edwards alleging that they are liable under 42 U.S.C. § 1983 and various state laws. Mr. Galmon filed a nearly identical suit on the same day, and the Court consolidated all three actions. In lieu of answering the two later-filed complaints, Defendants filed the instant motions to dismiss. As the arguments in both of Defendants' motions and Plaintiffs' oppositions are substantially similar, the motions will be treated together in this order.[2]

## PARTIES' ARGUMENTS

Defendants essentially assert the same claims in both motions to dismiss. Specifically, Defendants contend that these cases must be dismissed because (a) the Court lacks subject

---

[2] When both sets of Plaintiffs' claims and arguments are the same, the Court will refer generally to "Plaintiffs."

matter jurisdiction;[3] (b) Plaintiffs filed their complaints to circumvent the scheduling order in the original case arising from this incident; and (c) Plaintiffs fail to state a claim for relief.

**A. Claim-Splitting**

Procedurally, Defendants argue that the instant Complaints should be dismissed because they are duplicative of the Original Complaint. Defendants further claim that Plaintiffs knew that they may have had a claim against Lt. Redmond well before the deadline for amendments in the Original Complaint, but simply failed to amend it. Plaintiffs, on the other hand, argue that Defendants provide no legal support for this contention, and that they filed these actions within the statute of limitations, thus they are proper.

**B. Substance of the § 1983 Claim**

As to the substance of Plaintiffs' § 1983 claim, Defendants argue that Plaintiff must allege facts to show that there was a "governmental termination of freedom of movement *through means intentionally applied to* the object of detention." (Rec. Doc. 124-1)  Moreover, Defendants argue that Plaintiffs fail to state

---

[3] Defendants' basis for their argument that the Court lacks subject matter jurisdiction to hear this case is unclear and without merit; therefore, the Court will pass on considering the parties' related arguments.

a claim based on a failure to train theory because the Sheriff's Office met state training standards, and because the argument that different training would have been better does not constitute a cognizable claim under § 1983. Further, Defendants point out that liability based on a failure to train is rare, and that the Fifth Circuit has only found such liability in one instance where the sheriff failed to provide any training at all. Finally, Defendants argue that Plaintiffs have failed to specifically allege any unconstitutional policy or custom, so they fail to state a claim.

Plaintiffs contend that they state a claim against Defendants because Defendants' actions caused the shooting. Mr. Galmon specifically contends that he only seeks to hold Lt. Redmond liable individually; therefore, he does not need to show proof of a policy or custom. Mr. Galmon argues that, to hold Lt. Redmond liable, he need only show that Lt. Redmond was deliberately indifferent to a known or obvious consequence of his action. Thus, Mr. Galmon argues that because he alleges that Lt. Redmond disregarded the obvious dangers of installing an aftermarket trigger, he sufficiently states a claim against Lt. Redmond. Mr. Galmon further argues that Sheriff Edwards is personally liable for failure to train and supervise, negligently hiring Deputy Phebus, and ratifying constitutional violations,

emphasizing that he seeks to hold Sheriff Edwards, and not the municipality, liable.

## LEGAL STANDARD

**A. Failure to State a Claim**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as

6

factual allegations.  <u>Iqbal</u>, 556 U.S. at 678.

**<u>DISCUSSION</u>**

**A. Claim-Splitting**

The Fifth Circuit has held that "when a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint ***may*** be dismissed." <u>Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.</u>, 95 F.3d 358, 362 (5th Cir. 1996) (emphasis added); <u>Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.</u>, 921 F. Supp. 2d 527, 540-41 (E.D. La. Jan. 30, 2013) (Zainey, J.). This rule is particularly applicable when "the plaintiff files the second complaint to achieve procedural advantage by circumventing the rules pertaining to the amendment of complaints." <u>Friends of the Earth, Inc.</u>, 95 F.3d at 362 (internal citation omitted). Dismissal is not proper in all cases, however. For example, in <u>Curtis v. Citibank,</u> 226 F. 3d 133, 136 (2d. Cir. 2000), a district court presiding over a discrimination suit denied plaintiffs leave to amend to add a retaliation claim on the grounds that the amendment was untimely, and then, when plaintiff filed a second suit claiming retaliation, the district court dismissed it as duplicative. <u>Id.</u> The Second Circuit reversed the district court holding that the retaliation claim was a subsequently arising claim that could not have been brought in

the first suit. Id.

Clearly, the instant claims against Lt. Redmond may not be dismissed as he is not a defendant in the original suit. Sheriff Edwards, however, is named in the original suit. The instant suits against Sheriff Edwards arise from the exact same incident and often repeat verbatim the allegations of the first-filed complaint. But, even though the claims in the second suit are nearly identical, the Court finds that: (a) unlike the plaintiffs in Friends of the Earth, it does not appear that Plaintiffs filed these suits to circumvent the amendment deadline in 12-2145,[4] (b) there are some differences in the claims, and (c) consolidation of the claims is a sufficient remedy. Much like the plaintiff in Curtis who sought to add a retaliation theory to her Title VII claim, Plaintiffs in this case seek to add alternate theories of liability to their § 1983 and state law claims that are related to Lt. Redmond and were unknown at the time of filing the original suit. Further, Plaintiffs did not conceal their filing of the second suits, as did the plaintiff in Friends of the Earth or engage in any other deliberate attempt to gain an unfair

---

[4] Though the Court finds it curious that Plaintiffs risked passage of the amendment deadline by waiting until after Lt. Redmond's deposition to add him as a defendant, there is a paucity of evidence that these suits were filed to gain a procedural advantage. This is not a situation wherein Plaintiffs attempted to amend and were denied, thereby prompting them to file another suit. Rather, Plaintiffs appear to have chosen to this course of action over the option of an amendment.

advantage. In fact, had the parties sought leave to amend, the Court likely would have granted the request. Therefore, the Court will not dismiss the instant matters as duplicative.[5]

**B. § 1983 Claims**

Mr. Galmon states that he seeks to hold Lt. Redmond and Sheriff Edwards liable in their individual capacities only; yet, he cites to legal standards that pertain only to municipal liability. (Rec. Doc. 127, p. 17) Further, Briggs does not state in her Complaint whether she seeks to hold Defendants liable in their individual or official capacities. Therefore, out of an abundance of caution, and because the Fifth Circuit instructs the courts to examine the complaint to determine the nature of the actions rather than dismiss the complaint on this technicality, the Court will address the Defendants' liability in any relevant capacity. Parker v. Graves, 479 F.2d 335, 336 (5th Cir. 1973).

**1. Claims against Lt. Redmond**

**a. § 1983 Individual Liability Claims**

---

[5] Plaintiffs and Defendants both intermittently refer to and make arguments concerning Deputy Phebus' actions despite the fact that Deputy Phebus is not a defendant in the instant suit. In light of this pattern, the Court must emphasize that Deputy Phebus is a defendant in the original complaint only, and all argument and claims relating to him will not be treated in the instant motions to dismiss as those issues are only partially briefed and are not specifically at issue. Therefore, all claims against Deputy Phebus and all claims against Sheriff Edwards that involve Deputy Phebus are still pending in the original suit arising from this incident (Case No. 12-2145).

Plaintiffs assert that Lt. Redmond is liable under § 1983 because he deprived Dee Jay of: (a) his Fourth Amendment right to be free from excessive force, and (2) his Fourteenth Amendment right to not be denied medical care while detained by police.[6] Each potential basis for liability is discussed below.

### i. Fourth Amendment Excessive Force Claim

A government actor is liable in his individual capacity under § 1983 if the plaintiff can prove that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999); <u>Cornish v. Corr. Servs. Corp.</u>, 402 F.3d 545, 549 (5th Cir. 2005). Supervisory liability exists when there is either "personal involvement in the constitutional deprivation, or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 (5th Cir. 1987).

Supervisory liability in § 1983 cases is a murky area of the law. <u>See</u> Kit Kinports, *The Buck Does Not Stop Here: Supervisory*

---

[6] The Court recognizes that, while Mr. Galmon brings a claim for denial of medical care, the Briggs complaint does not explicitly make such a claim. The Court will allow the Briggs claim to move forward based on this theory, though, because, on a motion to dismiss, the Court is charged with the task of examining the complaint for any possible theory of recovery, not just those theories explicitly alleged. <u>Due v. Tallahassee Theatres, Inc.</u>, 333 F.2d 630, 632 (5th Cir. 1964).

*Liability in Section 1983 Cases*, 1997 U. Ill. L. Rev. 147 (1997). Not only are there Circuit splits on this issue, there are conflicting standards that arise from the same Circuit, and even the same courts, and the Supreme Court has said little on the subject. Id. at 150-51. In Rizzo v. Goode, the Supreme Court indicated that there should be an "affirmative link" between the ***constitutional wrong*** and the ***supervisor's actions or inactions***. Rizzo v. Goode, 423 U.S. 362, 371 (1976) (emphasis added); see also Kinports, supra, p. 152-52. Left to determine what types actions or inactions constitute such an "affirmative link," the Fifth Circuit has made clear that mere negligence on the part of the supervisor does not give rise to supervisory liability. Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992). Rather, the Fifth Circuit has repeatedly applied a "deliberate indifference" standard to supervisory liability claims where the supervisor is not directly involved. Doe v. Taylor Independent School Dist., 15 F.3d 443, 453 (5th Cir. 1994) (holding that a showing of deliberate indifference is required for supervisory liability in a failure to train case); Rios v. City of Del Rio, Tex., 444 F.3d 417, 427 (5th Cir. 2006) (applying deliberate indifference standard to an excessive force claim); Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005); compare to Sanders, 950 F.2d at 1160 (in a

11

false arrest and malicious prosecution case, the court applied a standard employed by the Seventh Circuit which would require the Court to ask whether the supervisor "[knew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [he] might see.")

Accepting the fact that "deliberate indifference to the known or obvious fact that such constitutional violations would result," is the standard for supervisory liability cases, the Court must then determine how to apply the standard. The standard is best described in <u>Estate of Davis</u> wherein the Fifth Circuit explains that:

> For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference [...] To satisfy the deliberate indifference prong, a plaintiff *usually* must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.

<u>Estate of Davis</u>, 406 F.3d at 381 (internal citations omitted) (emphasis added). The opinion goes on to recognize that, though it is rare, and thus far has only happened in one case, a single action can suffice to show deliberate indifference. <u>Id.</u> at 382-

12

83.[7]

Applying the deliberate indifference standard to the instant case, the Court finds that, though Plaintiffs' allegations sufficiently allege that Lt. Redmond was deliberately indifferent to the *dangers or installing an after market trigger*, Plaintiffs do not sufficiently allege that Lt. Redmond was deliberately indifferent to Dee Jay's *constitutional rights*.[8] Plaintiffs' allegations, even taken as true, cannot show that Lt. Redmond's actions were the cause of or affirmatively linked to the constitutional violation.   Lt. Redmond's actions may have been the cause of Dee Jay's death[9] because the gun would not have gone off were it not for the aftermarket trigger, that is not the same

---

[7] In Brown, the Court found that the single decision to not train a deputy who had no experience gave presented so obvious a risk that the omission gave rise to liability. Brown, 219 F.3d 450,463 Though Brown found municipal liability, the Court finds that the Fifth Circuit often borrows language from municipal liability cases when considering supervisory liability. As was noted in Doe, "legal elements of an individual's supervisory liability and a political subdivision's liability, however, are similar enough that the same standards of fault and causation should govern." Doe, 15 F.3d 443, 453 (5th Cir. 1994).

[8] Given the fact that the standard that must be applied is very murky and that one court has found a failure to supervise based on a single decision, it would be improper for the Court to dismiss Plaintiffs' excessive force claims. In a motion to dismiss,  a plaintiff need not prove that he has a successful claim, but rather he must prove that he has a cognizable claim. See Twombly, 550 U.S. at 556 ("even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.")

[9] This assumption is made in the hypothetical and is not meant to indicate that the Court finds that Lt. Redmond's actions caused Dee Jay Galmon's death.

as saying that his actions caused the constitutional violations
of excessive force and/or denial of medical care. See Baker v.
McCollan, 443 U.S. 137, 146 (1979) (drawing line between
constitutional torts and state law torts); Shillingford v.
Holmes, 634 F.2d 263, 265 (5th Cir. 1981) (same)(abrogated on
other grounds). Regarding the excessive force claim, Plaintiffs
argue that Deputy Phebus either intentionally shot Dee Jay or
accidentally shot him because of the aftermarket trigger. Under
the former theory, there is no way to conclude that the
installation of an aftermarket trigger caused Deputy Phebus to
intentionally shoot Dee Jay. If the latter theory is true, the
excessive force would be Deputy Phebus' decision to point the
weapon at Dee Jay, not the actual shooting. Watson v. Bryant, 11-
60699, 2013 WL 3227633, *4 (5th Cir., Feb. 4, 2013) (even where a
shooting was accidental, an officer may violate the "Fourth
Amendment if he acted objectively unreasonably by deciding to
make an arrest [or] by drawing his pistol.")  Again, there is
simply no logical way to conclude that the installation of an
aftermarket trigger on Deputy Phebus' weapon *caused* Deputy Phebus
to draw a weapon on a teenager who was allegedly unarmed and had
his hands in the air.  As to the denial of medical treatment
claims, there is, again, no way to determine that installation of
an aftermarket trigger would cause Lt. Redmond to deny treatment

14

to Dee Jay. Therefore, Defendants' motion to dismiss must be granted on this issue.

### ii. Fourteenth Amendment Denial of Medical Treatment

In his Complaint, Mr. Galmon asserts a claim under section § 1983 based on a denial of medical treatment.[10] "After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." Nerren v. Livingston Police Dep't, 86 F.3d 469, 473 (5th Cir. 1996) "The Due Process Clause of the Fourteenth Amendment guarantees that a person detained by the police is entitled to medical care." Carter v. Reach, 399 Fed.Appx. 941, 942 (5th Cir.2010). "Officers violate that right if they are deliberately indifferent to a serious illness or injury. A showing of deliberate indifference requires a showing that the defendant subjectively knew of a substantial and significant risk and that he effectively disregards that risk." Jacobs v. West Feliciana Sheriff's Dept.,

---

[10] Though some Circuits recognize a Fourth Amendment right to medical treatment, the Court will construe the claim contained in Paragraph 47 of Mr. Galmon's Complaint as a Fourteenth, and not a Fourth, Amendment claim, as it appears that the Fifth Circuit analyzes an arrestee's right to medical care under the Substantive Due Process Clause of the Fourteenth Amendment. Nerren, 86 F.3d at 473; compare to Legg v. Pappas, 383 Fed. Appx. 547 (7th Cir. 2010) (recognizing Fourth Amendment right to medical care).

228 F.3d 388, 395 (5th Cir. 2000).

Under the theory that Deputy Phebus intentionally shot Dee Jay, it is clear that Dee Jay was "seized" or "detained;" therefore, in that situation, the Fourteenth Amendment guaranteed him that the officers at the scene would not exhibit deliberate indifference to his serious medical needs.[11] Plaintiffs allege that Lt. Redmond was on the scene and that Dee Jay was denied medical treatment and left on the ground suffering from a severe bullet wound. These allegations clearly state a claim for denial of medical care that Defendants did not address in their motions to dismiss. Therefore, though Plaintiffs' excessive force claims against Lt. Redmond have been dismissed, Plaintiffs may maintain their § 1983 claims on these grounds.

### b. § 1983 Official Capacity Claims

A claim against a defendant in his official capacity requires proof: 1) that the defendant was acting as a policymaker, 2) that a constitutional injury occurred, 3) that there was a policy, custom, or "single act" under Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), and 4) that the policy, custom, or Pembaur act was the moving force behind the injury.

---

[11] See, Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004)("An officer seizes a person when he, by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen.  In addition, the "governmental termination of freedom of movement  must be made through means intentionally applied."

See Brown, 219 F.3d 450, 457 (5th Cir. 2000). Applying these elements to the instant case, Plaintiffs fail to state a claim against Lt. Redmond in his official capacity because, even accepting the facts in the Complaint as true, they have not alleged that Lt. Redmond is a policymaker or that there was a policy, custom, or single Pembaur act.

Plaintiffs do not allege that there is a policy or custom in place that allows the alteration of service weapons, but rather alleges that Lt. Redmond violated the official policy regarding altering weapons. Moreover, Plaintiffs do not properly allege that Lt. Redmond is a policymaker who may be liable for a single act. Mr. Galmon falls short in his attempt to analogize the instant matter to Pembaur. He argues that Lt. Redmond is analogous to the assistant prosecutor in Pembaur and notes that, in that case, the Supreme Court allowed the county to be held liable for the single action of an assistant prosecutor. Mr. Galmon misreads Pembaur, however. In Pembaur, the law enforcement officers did in fact call the assistant county prosecutor for guidance, but the assistant prosecutor then turned to the County Prosecutor, who was statutorily granted final policymaking authority, and who gave the instruction that caused the constitutional violation. Pembaur, 475 U.S. at 484. Liability in Pembaur was therefore based on the single action of the County

Prosecutor, not the assistant county prosecutor, as is made clear in the Supreme Court's opinion. Id. at 483-84.

Accordingly, Defendants' motions to dismiss will be granted on these grounds.

### 2. Claims Against Sheriff Edwards

#### a. Official Capacity

Any official capacity claims against Sheriff Edwards must be evaluated under the same standard for official capacity claims as was discussed in the previous section.[12]

Applying these standards to Sheriff Edwards, Plaintiffs fail to state a claim against Sheriff Edwards in his official capacity based on his actions as they relate to Lieutenant Redmond because, regardless of the actions or inactions attributed to Sheriff Edwards, there is no causal link to the constitutional injury. As was discussed above, the installation of a hair trigger is not the cause of either excessive force or a denial of medical care. Therefore, Defendants' motions to dismiss must be granted as to Plaintiffs' claims against Sheriff Edwards in his

---

[12] Plaintiff must show that: 1) that the defendant was acting as a policymaker, 2) that a  constitutional injury occurred, 3) that there was  a policy, custom, or "single act" under Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), and 4) that the policy, custom, or Pembaur act was the ***moving force*** behind the injury. See Brown, 219 F.3d 450, 457 (5th Cir. 2000)(emphasis added).

official capacity as they relate to Lt. Redmond. The parties claims against Sheriff Edwards in relation to Deputy Phebus, however, are not at issue in the instant motion to dismiss; and therefore, remain pending in civil action 12-2145.

### b. Individual Capacity

A sheriff may be held liable in his individual capacity for his failure as a supervisor to train and/or supervise. The standard for liability is the same as the standard for a failure to supervise or train in the municipal capacity, however, so Plaintiffs still fail to state a claim due to their inability to prove causation.

### C. State Law Claims

Briggs brings state law negligence and <u>Lejeune</u> actions, and Mr. Galmon brings wrongful death, survival, negligence, and <u>Lejeune</u> actions under Louisiana state law. Defendants did not specifically request dismissal of Plaintiffs' state law claims or submit any briefing on the issue. Moreover, Plaintiffs allege ample facts to state causes of action against Lt. Redmond on these claims. With the pending § 1983 claims for denial of medical care, the Court has supplemental jurisdiction over these claims, thus dismissal of the state law claims would be inappropriate. <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349 (1988) (internal citations omitted) (Federal jurisdiction

exists over an entire action, including state law claims, when the federal and state law claims "derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.")

Accordingly,

Defendants' **Motions to Dismiss (Rec. Docs. 122, 124)** are **GRANTED IN PART** and **DENIED IN PART.**

**IT IS ORDERED** that Defendants' Motions to Dismiss are **GRANTED** with respect to: (1) all Section 1983 claims against Sheriff Edwards based on his actions or inactions with respect to Lt. Redmond; (2) all Section 1983 claims against Lt. Redmond in his official capacity, (3) all Section 1983 claims against Lt. Redmond in his supervisory capacity; and (4) all Section 1983 claims against Lt. Redmond in his individual capacity inasmuch as the claim relies on a theory of excessive force.

**IT IS FURTHER ORDERED** that Defendants' motions are **DENIED** in all other respects.

New Orleans, Louisiana this 6th day of November, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE